IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **RUTHIE TUCK** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] **Case No.: 1:17-cv-00394-ACA** |
| | ] |
| **ALABAMA INSTITUTE FOR** | ] |
| **THE DEAF AND BLIND, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## **MEMORANDUM OPINION**

In her shotgun complaint, Plaintiff Ruthie Tuck asserts that Defendants Alabama Institute for the Deaf and Blind ("AIDB"), John Mascia, and Travis Fields violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and the equal protection clause of the Fifth and Fourteenth Amendments. (Doc. 1). The Defendants moved for summary judgment and Ms. Tuck responded to the motions. (Doc. 26 and Doc. 27). Having considered the motions, responses, and evidentiary submissions, the court **WILL GRANT** the Defendants' motions.

I. **BACKGROUND**

In deciding a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012).

In the light most favorable to Ms. Tuck, the facts are as follows. AIDB is the official state agency designated to conduct educational and training programs for the deaf, hearing impaired, blind, and visually handicapped residents of the State of Alabama. Ala. Code § 21-1-23. The E.H. Gentry Technical Facility is a vocational and educational rehabilitation program under the umbrella of AIDB that serves deaf and blind adults, known to AIDB as its "consumers." (Doc. 21-2 at 4–5). AIDB "employment specialists" assist consumers in obtaining employment within the community through personalized assessments and vocational training based on their professional goals. (*Id.*; Doc. 26-30 at 1–2). AIDB also assigns each consumer a job coach who provides hands on pre-employment training in real world settings while under the job coach's supervision. (Doc. 21-2 at 4–6; Doc. 21-1 at 7).

AIDB employees are assigned to caseloads based on the needs of their consumer population. (Doc. 21-1 at 11). Those caseloads include four categories:

general,[1] blind, deaf, and deaf/blind. (*Id.*). Ms. Tuck, a black female, worked as a job coach for the general caseload at E.H. Gentry from 2011–2015. (*Id.* at 11, 14). During that same period, the general caseload employment specialist was Lori Mitchell. (*Id.* at 11).

Beginning around 2011, job coaches within E.H. Gentry were assigned duties traditionally performed by employment specialists. (Doc. 21-1 at 19–20, 28–29). The job coaches did not receive a salary increase in consideration for assuming these additional responsibilities. (*Id.*). In November 2011, Ms. Mitchell was promoted to "Assistant to Director of Student and General Services" but retained her responsibilities as employment specialist. (Doc. 21-5 at 3, ¶¶ 6–7; Doc. 21-1 at 20–21). Following Ms. Mitchell's promotion, Ms. Tuck was required to perform the role of both employment specialist and job coach without receiving additional compensation. (Doc. 1 at 5–6, ¶ 16).

Frustrated that they did not receive additional compensation, Ms. Tuck and two other job coaches submitted several complaints to AIDB managers and requested clarification of their duties and responsibilities. (Doc. 21-3 at 3; Doc. 26-6 at 1; Doc. 26-7 at 1–3; Doc. 26-19 at 1–2). The job coaches argued that their job description did not accurately reflect the duties of the job coach position and

---

[1] The general caseload includes Consumers who suffer from cognitive disabilities such as autism, schizophrenia, and bipolar disorder. (Doc. 21-1 at 10–11).

requested back pay for completing the additional tasks. (Doc. 26-14 at 1–3; Doc. 26-19 at 1–2).

Travis Fields, AIDB's Executive Director, reviewed these grievances and held a meeting with job coach personnel to better understand their concerns. (Doc. 21-2 at 8–10). Thereafter, Mr. Fields referred the matter to the human resources department to "take a good look at it" and determine whether changes in the job description were necessary. (*Id.* at 8–9). Upon review, the human resources department concluded that "all of the duties assigned to the job coaches were within the scope of their job description" and "the salary scale did not need to be changed." (Doc. 21-5 at 3). Despite these findings, Mr. Fields relieved the job coaches of certain duties. (Doc. 21-2 at 14).

On November 27, 2012, AIDB posted an opening for a Human Resources Coordinator position. (Doc. 1 at 6–7, ¶ 18). Ms. Tuck met the qualifications for the position and submitted an application. (Doc. 21-1 at 32). Ms. Tuck was interviewed but not referred to the hiring committee for consideration. (Doc. 1 at 6–7, ¶ 18; Doc. 21-9 at 3). Instead, AIDB hired a white male candidate for the position. (Doc. 21-1 at 32; Doc. 21-5 at 2).

On June 23, 2013, Ms. Tuck took a leave of absence from AIDB to undergo orthopedic surgery. (Doc. 27-32 at 1–4). Two months later, Ms. Tuck returned to AIDB with a doctor's note that limited her to "light duty work" (doc. 21-1 at 57),

4

and included restrictions on "standing and walking" (doc. 21-3 at 5). Mr. Fields determined that "the limitations given by Ms. Tuck's physician would not have permitted her to perform all of the necessary duties of her job." (*Id.*). As a result, Ms. Tuck was placed on paid medical leave until she was able to perform all of her regular job duties. (Doc. 21-1 at 17–18, 35; Doc. 21-9 at 5, ¶ 15).

On October 8, 2013, an employment coordinator position became available requiring a minimum of "five years of experience" and a "sign language level of intermediate." (Doc. 26-28 at 1–3). Ms. Tuck met the listed qualifications and applied for the position, but was not offered an interview. (Doc. 21-1 at 16–17). AIDB received sixteen applications and interviewed two candidates. (Doc. 21-5 at 2–3). Ultimately, a black female was selected for the position. (*Id.*).

On October 12, 2014, Ms. Mitchell resigned as employment specialist for the general caseload at E.H. Gentry. (*Id.* at 4, ¶¶ 12–14). In December, Ms. Tuck applied for the position when the opening was posted by AIDB. (Doc. 21-1 at 7). That same month, Ms. Tuck filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against AIDB, alleging that it had discriminated against her on the basis of race, gender, and physical disability. (*Id.* at 53–58).

AIDB hired Ms. Tuck for the employment specialist position in February 2015. (*Id.* at 5). Ms. Tuck received a considerable salary increase with the

promotion. (*Id.* at 7, 12–13). However, Ms. Tuck continued to perform the duties of both an employment specialist and job coach due to budget constraints. (Doc. 21-1 at 14–17). She remains in that position today. (Doc. 1 at 1).

Ms. Tuck commenced this action on March 13, 2017, asserting claims against AIDB, John Mascia, and Travis Fields, in their official and individual capacities. (*Id.* at 4–5, ¶¶ 10–13). Ms. Tuck's complaint includes five counts against the Defendants. In Count One, Ms. Tuck alleges that the Defendants discriminated against her on the basis of race and gender by failing to promote her and by failing to provide additional compensation for performing the duties of employment specialist and job coach, in violation of Title VII and § 1981. (*Id.* at 6–9, ¶¶ 18–19, 26, 28, 30). In Count Two, Ms. Tuck brings a claim pursuant to 42 U.S.C. § 1983 for alleged violations of her equal protection rights based on the same allegations that form the basis of her claim in Count One. (*Id.* at 13–15, ¶¶ 47–55). In Count Three, Ms. Tuck alleges that AIDB retaliated against her after she requested a promotion and salary increase for preforming the duties of employment specialist and job coach. (Doc. 1 at 15–17, ¶¶ 57, 60). Count Four alleges that AIDB subjected her to a hostile work environment by failing to provide additional compensation for performing the duties of employment specialist and job coach. (*Id.* at 17–18, ¶¶ 64–68). In Count Five, Ms. Tuck claims that the Defendants denied her reasonable accommodations by not allowing her to

6

return to work while she recovered from orthopedic surgery in violation of the ADA. (*Id.* at 18–19, ¶¶ 71–73).

## II. DISCUSSION

The Defendants move for summary judgment on all counts of the complaint. In their motions, Defendants argue that claims asserted with respect to AIDB's failure to promote Ms. Tuck are time-barred under both Title VII and § 1983. The Defendants contend that Ms. Tuck's ADA failure-to-accommodate claim is time-barred as well. As to the remaining counts, the Defendants contend that Ms. Tuck is unable to establish a *prima facie* case for her disparate treatment, hostile work environment, and retaliation claims. Additionally, Defendants Mascia and Fields argue they are entitled qualified immunity on all claims brought against them in their individual capacities.

In deciding a motion for summary judgment, the court must first determine if the parties genuinely dispute any material facts, and if they do not, whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A disputed fact is material if the fact "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to Defendants' motions for summary judgment, Ms. Tuck concedes a number of claims. She agrees that Mr. Fields and Dr. Mascia are entitled to summary judgment on all claims made against them in their official capacities. (Doc. 27-1 at 17). Ms. Tuck also concedes that summary judgment should be entered in favor of the Defendants on Count Five, which alleges violations of the ADA. (Doc. 26-1 at 13–14). And, Ms. Tuck agrees that she is barred from bringing any claims based on unlawful employment practices that occurred outside the time period in which she was required to file a charge with the EEOC, although she disagrees about the applicable time limitation. (*Id.*).

A. <u>Title VII Claims</u>

Ms. Tuck alleges violations of Title VII for failure to promote, disparate treatment, hostile work environment, and retaliation.[2] Each of these claims fail as a matter of law. The failure to promote claim is barred by the applicable statute of limitations. The disparate treatment, hostile work environment, and retaliation claims fail because Ms. Tuck cannot establish a *prima facie* case for any of these claims. The court will address each claim in turn.

---

[2] Ms. Tuck's complaint merely alleges she was subjected to a hostile work environment. She does not identify a particular cause of action that results from this allegation. (Doc. 1 at 17–18). Her brief in response to Defendants' motions for summary judgment implies the claims arise under Title VII. (Doc. 26-1 at 13–14).

8

1. <u>Failure to Promote</u>

The Defendants argue that Ms. Tuck's failure to promote claim is time-barred under Title VII because she filed her EEOC charge more than 180 days after the alleged discrimination occurred. Ms. Tuck concedes that only those unlawful employment practices complained of in a timely-filed charge of discrimination can form the basis for Title VII liability. However, Ms. Tuck maintains that the applicable time limitation is 300 days.

To bring a Title VII action, a plaintiff must exhaust her administrative remedies with the EEOC before she is permitted to file suit in federal court. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *see* 42 U.S.C. § 2000e–5(e). "Whether a plaintiff must allege discriminatory treatment within 180 days or within 300 days depends on whether that plaintiff lives in a "deferral" or "non-deferral" state." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1214, n.2 (11th Cir. 2001). A "deferral state" is a state with an EEOC-like administrative agency. *See generally E.E.O.C. v. Commercial Office Prod. Co.*, 486 U.S. 107, 110–11 (1988). In non-deferral states such as Alabama, which does not have an EEOC-like administrative agency, the plaintiff must file her charge of discrimination within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 n.13 (11th Cir. 2005).

9

In this case, Ms. Tuck filed a charge with the EEOC on December 23, 2014. (Doc. 21-1 at 53). Consequently, any claims arising from an unlawful employment practice that occurred before June 26, 2014, are time-barred. According to Ms. Tuck's EEOC charge, AIDB failed to promote her on two separate occasions—first on February 11, 2013, and again on December 17, 2013. (*Id.* at 55–56; Doc. 21-5; Doc. 27-29). Because both of these acts occurred before June 26, 2014, Ms. Tuck's failure to promote claim brought under Title VII is barred. Accordingly, the court **WILL GRANT** summary judgment for the Defendants on Ms. Tuck's Title VII failure to promote claims.

    2. Disparate Treatment

Ms. Tuck contends that AIDB discriminated against her by refusing to provide additional compensation in consideration for performing the roles of employment specialist and job coach from 2011–2017. Defendants argue they are entitled to summary judgment on Ms. Tuck's disparate treatment claim because she fails to establish a *prima facie* case of discrimination under Title VII. They also allege that Ms. Tuck has not proven that the legitimate, nondiscriminatory reasons AIDB offered for their decisions were pretextual. Because the court finds that Ms. Tuck did not establish a *prima facie* case of discrimination, it will not address the alleged failure to establish pretext.

To be entitled to relief, Ms. Tuck must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) AIDB treated similarly situated employees outside of her protected class more favorably; and (4) she was qualified to do the job. *See McDonnell Douglas Corp.v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the Defendants to articulate a legitimate, non-discriminatory reason for their action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If the Defendants sustain their burden, Ms. Tuck must prove that Defendants' proffered reason is really a pretext for unlawful discrimination. *Id.* at 255–56.

Here, Ms. Tuck is unable to establish the third prong of her *prima facie* case because she presents no evidence that AIDB treated similarly situated employees outside of her protected class more favorably. Ms. Tuck's complaint appeared to claim that she was treated differently because of her gender and her race (doc. 1 at 8, ¶ 23), but did not identify any male comparators (doc 21-1at 12, 25-26). And, the evidence establishes that AIDB employees of all races were required to perform job coach duties while employed as employment specialists in other caseloads within G.H. Gentry without additional compensation. (Doc. 21-1 at 12, 14–15, 19–21, 25). In fact, Ms. Tuck admitted as much in her deposition. (Doc. 21-1 at 18-19). Because AIDB required other employees outside of Ms. Tuck's protected class to perform the functions of both job coach and employment

specialist, Ms. Tuck cannot prove she was treated differently because of her race or gender. Consequently, she cannot establish the third prong of her *prima facie* case.

Ms. Tuck does not deny she cannot prove the third prong of her *prima facie* case that AIDB treated her differently than employees outside of her protected class by requiring her to perform the functions of multiple jobs. Instead, she attempts to refashion her disparate treatment claim by alleging that AIDB denied her reasonable accommodations after undergoing orthopedic surgery but provided such accommodations to employees outside of her protected class. (Doc. 26-1 at 9–11). She makes this claim for the first time in response to AIDB's motion for summary judgment.

Ms. Tuck cannot amend her complaint in her response to a motion for summary judgment in an effort to save her claim. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). But, even if Ms. Tuck was permitted to raise this argument for the first time in her brief opposing summary judgment, she still fails to make a *prima facie* case of disparate treatment. According to Ms. Tuck's deposition testimony, AIDB provided reasonable accommodations to both female and black employees who suffered from physical disabilities but were nonetheless able to perform all of the essential functions of their jobs. (Doc. 21-2 at 11–13; Doc. 21-3 at 6). And, the undisputed evidence establishes that AIDB only accommodated those employees who were

12

able to perform the essential functions of their jobs. (Doc. 21-3 at 5–7). Ms. Tuck does not dispute that she could not perform the essential functions of her job, even with accommodations. (*Id.* at 5–6; Doc. 21-2 at 11). Therefore, Ms. Tuck fails to identify any similarly situated comparators outside of her protected class who were treated more favorably.

Because Ms. Tuck is unable to present evidence establishing a *prima facie* case of disparate treatment, the court **WILL GRANT** summary judgment for the Defendants with respect to her Title VII disparate treatment claim.

### 3. Hostile Work Environment

Ms. Tuck alleges that she was "subjected to harassment by her superiors" as evidenced by AIDB's "require[ment] to complete an excessive work load" and it's failure to address her requests for assistance. (Doc. 1 at 17, ¶ 65). She also alleges that an isolated incident she considered offensive was directed at her during a staff meeting and that someone sabotaged her computer. (*Id.* at 17–18, ¶¶ 66–67).

To establish a *prima facie* hostile work environment claim, Ms. Tuck must show that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) that the Defendants are responsible for the hostile

13

environment under a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Ms. Tuck's claim fails for a number of reasons. First, she does not claim that she was subjected to this alleged hostility because she belonged to a protected group. Indeed, the evidence established that AIDB required job coaches of all races to perform multiple job functions. Second, Ms. Tuck cannot establish that that the alleged harassment was so severe that it altered the terms and conditions of her employment.

Ms. Tuck does not address the Defendants' contention that she cannot identify a severity that altered the terms and conditions of her employment or provide any evidence in support of her hostile work environment claims. Instead, Ms. Tuck rests her entire response only on the conclusory statement that "she has suffered a continuing and ongoing pattern of behavior exhibited by Defendant's that amounts to a hostile work environment." (Doc. 26-1 at 13–14). This is wholly insufficient to overcome a motion for summary judgment.

While the court must view the evidence in the light most favorable to Ms. Tuck, "consideration of a summary judgment motion does not lessen the burdens on the non-moving party . . . of coming forward with sufficient evidence on each element that must be proved." *Earley v. Champion Int'l*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 249–50). Because Ms. Tuck fails to

14

present a legal or factual basis in support of her hostile work environment claims, she does not sustain her burden of proof under Fed. R. Civ. P. 56.

Accordingly, the court **WILL GRANT** the Defendants' motions as to Ms. Tuck's hostile work environment claims under Title VII.

4. Retaliation

Defendants move for summary judgment on Ms. Tuck's retaliation claims on the basis that she is unable to establish a *prima facie* case under Title VII. In response to the Defendants' motions for summary judgment, Ms. Tuck abandons all retaliation claims "occurring beyond 300 days of filing her EEOC charge."[3] (Doc. 26-1 at 14; Doc. 27-1 at 9). Therefore, the only conceivable claims of retaliation presently before the court are AIDB's decision to wait two months before posting the employment specialist position in 2014 and its refusal to hire a job coach for the general caseload in 2015. (Doc. 21-9 at 6; Doc. 21-1 at 3, 24).

To establish a *prima facie* case of retaliation, Ms. Tuck must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) some causal relationship existed between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). If Ms. Tuck establishes a *prima facie case*, the Defendants must provide a legitimate, non-

---

[3] As noted above, in non-deferral states such as Alabama, a Title VII charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. *Hipp*, 252 F.3d at 1214 n.2.

discriminatory reason for their actions which Ms. Tuck will then be required to rebut as pretextual. *Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982).

Defendants contend that Ms. Tuck's retaliation claims fail because she cannot establish a causal link between the alleged adverse employment actions and the filing of her EEOC complaint. The court agrees. The record reflects that after Ms. Mitchell resigned as employment specialist for the general caseload, AIDB delayed posting an opening to fill the position until November 4, 2014. (Doc. 21-5 at 4, ¶¶ 12–14). Ms. Tuck filed her complaint with the EEOC on December 23, 2014. (Doc. 1 at 17, ¶ 67; Doc. 21-1 at 53–58). Because AIBD delayed posting the employment specialist position before Ms. Tuck filed her discrimination charge, she cannot establish the requisite causal connection between her protected activity and this alleged adverse employment action.

As for AIDB's decision not to hire a job coach for the general caseload, there is nothing in the record to suggest that this decision was born of anything other than a legitimate, nondiscriminatory reason. Defendants have presented undisputed evidence that AIDB's decision was based on budgetary concerns and its plan to restructure the way in which it staffed consumer caseloads. (Doc. 21-1 at 16, 23, 28; Doc. 21-6 at 4). In the face of this legitimate, non-retaliatory reason for the challenged employment action, the burden shifted back to Ms. Tuck to

prove that the Defendants' explanation is merely a pretext. *Lubetsky v. Applied Card Sys., Inc.,* 296 F.3d 1301, 1305 (11th Cir. 2002) (citations omitted). Ms. Tuck failed to offer any evidence of pretext and therefore failed to sustain her burden. Accordingly, the court **WILL GRANT** summary judgment for the Defendants as to this claim.

### B. *Claims for Relief Outside of Title VII*

In addition to the claims brought pursuant to Title VII, Ms. Tuck alleges that her equal protection rights under both the Fifth and Fourteenth Amendments were violated. She brings those claims under § 1981 and §1983. Because the Fifth Amendment does not provide a private right of action for claims against state officials, the court will not address those claims and **WILL ENTER** summary judgment in favor of Defendants as to any claim of a Fifth Amendment violation. *See United States v. Houston*, 456 F.3d 1328, 1335 n.5 (11th Cir. 2006).

#### 1. Claims Brought Pursuant to §1981

"Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008). When asserted against a state actor, it is the law of this Circuit that § 1981 claims have been "effectively merged into the section 1983 claim for racial discrimination." *Busby v. City of Orlando*, 931 F.2d 764, 771, n.6

(11th Cir. 1991). Because the Defendants are all state actors, Ms. Tuck's § 1981 claims will be analyzed below as part of her claims pursuant to § 1983.

### 2. Failure to Promote

Ms. Tuck brings a claim pursuant to § 1983 alleging that that AIDB denied her equal protection by promoting unqualified individuals outside of her protected class. Defendants argue this claim is barred by the applicable statute of limitations. Ms. Tuck did not offer a response to Defendants' contention, and with good reason.

The statute of limitations for § 1983 claims is the limitations period for "personal injury actions" in the state in which the district court is situated. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Alabama, § 1983 claims are subject to the two-year statute of limitations period contained in Ala. Code § 6-2-38(1). *Jones v. Preuit &Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). As discussed *supra*, Ms. Tuck's claim is based on decisions made in November 2012 and October 2013. Because Ms. Tuck filed her lawsuit more than two years after the alleged acts occurred, the claim is barred by the statute of limitations. Therefore, the court **WILL GRANT** summary judgment in favor of the Defendants on Ms. Tuck's § 1983 failure to promote claims.

3. Disparate Treatment

The legal elements necessary to prove disparate treatment under both Title VII and § 1983 are identical. *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). For the same reasons Ms. Tuck's claim fails under Title VII, it fails under § 1983. Accordingly, the court **WILL GRANT** summary judgment in favor of the Defendants on Ms. Tuck's disparate treatment claim brought under §1983.

4. Claims Against Mascia and Fields in Their Individual Capacities

Defendants Mascia and Fields move for summary judgment on the basis that they are entitled to qualified immunity with respect to all claims in their individual capacities because Ms. Tuck has failed to establish that their conduct amounted to a violation of her constitutional rights.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-part test for resolving qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. *Id.* at 201. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not violate a clearly established constitutional right. *Anderson,* 477 U.S. at 640.

As stated above, Ms. Tuck has failed to establish a violation of her rights under either the Constitution or federal law. Accordingly, the court need not address the Defendants' qualified immunity argument and **WILL GRANT** summary judgment in favor of Dr. Mascia and Mr. Fields on all claims brought against them in their individual capacities. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## III. CONCLUSION

For the reasons stated above, the court **WILL GRANT** the Defendants' motions for summary judgment and **WILL** enter judgment as a matter of law. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this January 31, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE